**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RUTH BELLAMY-EVO,

Plaintiff, Case No.: 6:20-cv-02091

vs.

CENTRAL FLORIDA YOUNG MEN'S CHRISTIAN ASSOCIATION, INC.,

Defendant.
_____________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, RUTH BELLAMY-EVO (hereinafter "Ms. Bellamy-Evo"), by and through the undersigned counsel, sues Defendant, CENTRAL FLORIDA YOUNG MEN'S CHRISTIAN ASSOCIATION, INC. (hereinafter "YMCA"), and as grounds therefore states as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action for damages brought against the YMCA under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and the Florida Civil Rights Act Section 760.01 *et seq.* ("FCRA"). This Court has original, concurrent and subject matter jurisdiction pursuant to article III, section 1 of the U.S. Constitution, 28 U.S.C. sections 1331, 1332 and 1343 and Florida Constitution.

2. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

3. Venue is proper in U.S. District Court, Orlando Division, Orlando, Florida because all actions material to the complaint have occurred in Orange County, Florida.

4. Ms. Bellamy-Evo is a resident of Orange County, Florida.

5. YMCA is a Florida corporation who is doing business in Orange County, Florida.

BRIGHTVIEW is authorized to do business in the State of Florida and is doing business in the State of Florida. The employment practices complained herein all occurred in Orange County, Florida.

**STATUTORY PREREQUISITES**

6. On about January 17, 2020, Ms. Bellamy-Evo timely filed an Amended Charge of Discrimination ("COD") with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission of Human Relations ("FCHR") against YMCA. On or around August 14, 2020, the EEOC issued Ms. Bellamy-Evo a Dismissal and Notice of Right to Sue, a copy of which is attached hereto as ***Exhibit "A".*** Ms. Bellamy-Evo received the EEOC's Dismissal and Notice of Right to Sue on or around September 17, 2020.

7. Ms. Bellamy-Evo has exhausted all administrative remedies, and all conditions precedent to the institution of this action have occurred or have been waived.

**GENERAL ALLEGATIONS**

8. On July 12, 2012, Ms. Bellamy-Evo began working for the YMCA on a fulltime basis as an "Administrative Assistant" for a period of three (3) years. She was then promoted to an "Accounting Specialist" at the YMCA, where she worked for approximately four (4) years in a quiet setting without any health issues.

9. Ms. Bellamy-Evo was qualified to work as an "Accounting Specialist".

10. Ms. Bellamy-Evo has a history of fibromyalgia, chronic migraines, sensitivity to loud noise (phonophobia) and sensitivity to bright lights (photophobia), for which she has sought and obtained medical treatment for many years.

11. In or around March 2019, the YMCA transferred Ms. Bellamy-Evo from the quiet setting to the Membership Engagement Team (hereinafter "Call Center"), which was a call center

like environment – loud setting.

12. From the outset, Ms. Bellamy-Evo's new working conditions negatively impacted her disability.

13. In an attempt to seek a reasonable accommodation from the YMCA for Ms. Bellamy-Evo's disability, in or around March 2019, she requested to be moved into a quieter setting (*e.g.*, another unoccupied desk, office space within the YMCA, or open cubicle where she could work from) to avoid the exposure of loud noises. In response, the YMCA, through its agents, told Plaintiff that "this is the new position [Call Center] and if you don't like it, you could get on another bus".

14. Ms. Bellamy-Evo began to feel sick the following two weeks from the loud noise stemming from the Call Center to the degree that Ms. Bellamy-Evo was unable to report to work on March 20 and 21, 2019.

15. On April 8, 2019 and April 25, 2019, Ms. Bellamy-Evo did not report to work because she was sick due to the noise exposure stemming from her new work environment.

16. On or about May 3, 2019, during an employee meeting at the YMCA, Ms. Bellamy-Evo – again – disclosed her health conditions and explained how the exposure to the loud noise stemming from the Call Center was negatively impacting her health; during said meeting, she renewed her request for a reasonable accommodation from the YMCA for her disability, by asking to be removed from the Call Center area and moved to another unoccupied desk or open cubicle; to which the YMCA responded, "there is nothing we can do".

17. On May 15, 2019, during an employee meeting at the YMCA, Ms. Bellamy-Evo again renewed her request for a reasonable accommodation and explained how the noise stemming from the Call Center was aggravating her condition; however, her request was ignored.

18. On June 12, 2019, Dr. Pedro T. Oliveros issued a document titled "Certification of Health Care Provider for Employee's Serious Health Condition". In that report, he opined, "[t]he patient has history of fibromyalgia and she is very sensitive to external noise/stimuli. In addition, she suffers from phonophobia due to migraines. It would be beneficial for this patient to minimize her exposure to phones (*i.e*. such as at a call center)."

19. On June 13, 2019, Ms. Bellamy-Evo served the YMCA with a true and correct copy of Dr. Olivero's recommendation and reiterated her request for a reasonable accommodation; to which the YMCA, through its agents, responded, "you could quit and collect unemployment, but we can't fire you, because you're performing". No reasonable accommodation was provided.

20. On June 20, 2019, Ms. Bellamy-Evo contacted the YMCA's Human Resources department to follow up on Dr. Olivero's reasonable accommodation request; to which the YMCA responded, "we did not know you were waiting for a response".

21. On July 9, 2019, Ms. Bellamy-Evo did not report to work because she was sick due to the aggravation of her disability caused by the loud noise stemming from the Call Center.

22. On July 19, 2019, Ms. Bellamy-Evo contacted her manager and YMCA's Human Resources department regarding her reasonable accommodation request; to which the YMCA responded, "your best bet is to seek employment elsewhere… I can help you update your resume".

23. From July 24-25, 2019 and August 9, 2019, Ms. Bellamy-Evo did not report to work because she was sick due to the aggravation of her condition caused by the loud noise stemming from the Call Center.

24. On August 23, 2019, a mass email was sent to Ms. Bellamy-Evo's team requiring

their contact information; however, Ms. Bellamy-Evo was not included on the email service list.

25. From August 27-29, 2019, Ms. Bellamy-Evo did not report to work for three (3) consecutive days because she was sick due to the aggravation of her condition caused by the loud noise stemming from the Call Center.

26. On September 5, 2019, Ms. Bellamy-Evo attended an employee meeting at the YMCA. During said meeting, Ms. Bellamy-Evo again explained how the loud noise stemming from the Call Center was deteriorating her health. During said meeting, she reminded the YMCA of Dr. Olivero's reasonable accommodation request and asked to be removed from the Call Center area; to which the YMCA responded, "what! the girls are making you sick". Ms. Bellamy-Evo then clarified that it was the loud noise stemming from the Call Center that was aggravating her disability; to which the YMCA reminded her that she could find employment elsewhere.

27. Ms. Bellamy-Evo noticed that there were six unoccupied desks at the YMCA. The YMCA could have easily moved her to any of those unoccupied desks or open cubicles at a quieter area at any time, and that reasonable measure would have easily solved the problem. Yet, they refused to provide her with a reasonable accommodation.

28. On September 17, 2019, the YMCA held a meeting with Ms. Bellamy-Evo's team, yet she was not invited.

29. On September 19, 2019, Ms. Bellamy-Evo went to the emergency room as a result of the excruciating pain caused from the exposure of loud noise stemming from the Call Center.

30. On October 4, 2019, Ms. Bellamy-Evo met with her then manager, Casandra Schaefer, who did not understand why the YMCA kept Ms. Bellamy-Evo at the Call Center; precisely, when her job description was totally unrelated to those required by the Call Center.

31. On October 7, 2019, Ms. Bellamy-Evo contacted the YMCA to follow up on her reasonable accommodation request. It was then that she was made aware that her request had been denied.

32. On October 21, 2019, Ms. Bellamy-Evo had an early meeting with Ms. Leihlani Bajacan ("Ms. Bajacan"), Finance Director. During said meeting, Ms. Bajacan told Ms. Bellamy-Evo, "if you need to use a cube to spread your work out, or to get a break I can allow that – but that's all I can do to accommodate you without permanently separating you from the team."

33. On October 31, 2019, Ms. Bellamy-Evo served Ms. Bajacan with an email reiterating her reasonable accommodations request.

34. Sometime thereafter, the YMCA, through its agent, ordered Ms. Bellamy-Evo to cover the front desk reception phone lines on November 20-21, 2019. Ms. Bellamy-Evo reminded the YMCA of her sensitivity to loud noise and how the front desk reception phone lines would cause her migraines to flare. In response, the YMCA, through its agents, told Ms. Bellamy-Evo to return to Dr. Oliveros and get a more detailed opinion; but until then, she had to stop requesting a reasonable accommodation from the YMCA. They further stated, "it doesn't matter who it's up to, the bottom line is you need to stop asking to be moved because that ship has sailed and Leihlani Bajacan is not going to move you".

35. During the meeting, Ms. Bellamy-Evo reminded her supervisor that there were still several unoccupied open cubicles in the Finance Department where she could easily be re-stationed; as she was for the past six (6) years without any health issues, and would not be exposed to the loud noise stemming from the Call Center or front desk reception area; to which the YMA responded, "we are not here to give you peace, and you need to do whatever you are told or it's insubordination".

36. Ms. Bellamy-Evo reminded the YMCA that she just needed a different seating arrangement for medical purposes in accordance with Dr. Olivero's recommendation; to which the YMCA responded, "I sympathize with you but there is nothing we can do".

37. On November 13, 2019, Ms. Bellamy-Evo was served with an email from Peggy Smith, Human Resources Employee Relations Representative, summarizing their conversation concerning a reasonable accommodation.

38. On November 13, 2019, Ms. Bellamy-Evo replied to Peggy Smith and copied Heidi Dotson, Human Resources Representative, Ms. Bajacan to the email explaining her condition.

39. Later that day, around 4:00 p.m., Ms. Bajacan came to the Call Center and offered brownies to Plaintiff's co-workers. Then, slams the door as she is exiting the Call Center; that is, after Ms. Bellamy-Evo sent an email to her, Plaintiff's immediate supervisor and YMCA's Human Resources explaining that she suffers from "Phonophobia", which is a fear of loud sounds.

40. On November 15, 2019, Ms. Bajacan visited the Call Center again, greeted the ladies, and intentionally slams the door as she exits the Call Center, thereby aggravating Plaintiff's symptoms.

41. On November 18-19, 2019, Ms. Bellamy-Evo did not report to work because she was sick due to the aggravation of her condition caused by the loud noise stemming from the Call Center.

42. On November 20, 2019, Ms. Bellamy-Evo observed that the YMCA had ordered twenty (25) stand up desks to accommodate Ms. Bellamy-Evo's co-workers' ergonomic issues; yet, the YMCA continued to deliberately ignore her request for a reasonable accommodation.

43. Despite the fact that she served the YMCA with Dr. Olivero's recommendation for a reasonable accommodation (*i.e*., minimize exposure to phones), Ms. Bellamy-Evo was still sporadically assigned to cover the front desk or the YMCA's general customer line, which received hundreds of calls a day.

44. On November 22, 2019, Ms. Bellamy-Evo did not report to work because she was sick due to the aggravation of her condition caused by the loud noise stemming from the front desk.

45. On December 13, 2019, Dr. Olivero issued another medical report. Said medical report reads as follows: "[t]his patient has history of chronic migraines, sensitive to loud noises (phonophobia) and bright lights (photophobia). Strongly recommend that this patient moves to a quieter office/environment than the Membership Engagement Office since the frequent ringing of the phones and loud noises trigger exacerbations of her migraines. The constant pain she has been experiencing associated with her migraines often interferes with her focus and concentration. It is my medical opinion that, without accommodations, her disabling migraine condition could lead to further functional impairment and deterioration."

46. Dr. Olivero served, via email, the YMCA with a copy of said report titled, "Certification of Health Care Provider for Employee's Serious Health Condition" dated December 13, 2019. Notwithstanding, the YMCA continued to demand Ms. Bellamy-Evo to cover the front desk and work from the Call Center.

47. On December 23, 2019, Ms. Bellamy-Evo went to the hospital and was admitted due to the loud noise exposed from her work environment.

48. On December 30, 2019, Ms. Bellamy-Evo contacted the YMCA's Human Resources Administrator, Debbie Sears, and asked her if she had received Dr. Olivero's updated

FMLA documents; to which Ms. Sears confirmed receipt thereon. Ms. Sears furthered disclosed that Heidi Dotson, Human Resources Representative, was also made aware of Dr. Olivero's request for reasonable accommodation.

49. On January 6, 2020, due to YMCA's conduct as set forth above, Ms. Bellamy-Evo was unable to return to the workplace because she could no longer endure the excruciating pain and migraines casually related to the noise exposure stemming from the Call Center.

## COUNT 1
## Violation of the American With Disabilities Act

50. Ms. Bellamy-Evo, reasserts and reaffirms the allegations set forth in paragraphs 1 – 49 above and further states that this is an action against YMCA for violation of the American with Disabilities Act.

51. Ms. Bellamy-Evo is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that she has a disability, the YMCA perceives her to have a disability and she has the requisite education to perform and can perform the essential functions of an accounting specialist.

52. The YMCA is an "employer" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

53. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

54. Ms. Bellamy-Evo was an employee of the YMCA within the meaning of 42 U.S.C. § 12111(4).

55. Prior to and at the time that the YMCA terminated (constructively discharged) Ms. Bellamy-Evo's employment, Ms. Bellamy-Evo was qualified for employment as an

accounting specialist.

56. Due to Ms. Bellamy-Evo's actual or perceived disability, the YMCA constructively discharged her. 42 U.S.C. § 12112(a).

57. Specifically, the YMCA's discriminatory actions included not making reasonable accommodations for the known physical limitations of Ms. Bellamy-Evo, an otherwise qualified individual with a disability who was an employee, despite the fact that doing so would not impose an undue hardship on the operation of the YMCA's business within the meaning of § 12112(b)(5)(A).

58. Ms. Bellamy-Evo has been damaged by the YMCA's violation of the ADA inasmuch as Ms. Bellamy-Evo has been unable to use her education and training as an accounting specialist, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

59. Ms. Bellamy-Evo is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

60. Ms. Bellamy-Evo is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

**WHEREFORE**, Ms. Bellamy-Evo respectfully requests that this Court award her such damages as she has sustained and as shall appear proper within the provisions of the ADA including, but not limited to, back pay, front pay, loss benefits, economic and non-economic compensatory damages, punitive damages, attorney's fees, costs, prejudgment interest, a trial by jury on all issues so triable and all other relief that this Court may deem just and proper.

**COUNT 2**
**FCRA Handicap | Disability Discrimination**

61. Ms. Bellamy-Evo, reasserts and reaffirms the allegations set forth in paragraphs 1 – 49 above and further states that this is an action against YMCA for violation of the Florida Civil Rights Act, *Fla. Stat. §§* 760.01 et seq.

62. The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer:

> (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.
> (b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

*Id*. at *Fla. Stat. §* 760.101) (a)-(b).

63. At all times relevant to this action, as an individual who had a disability or handicap, Ms. Bellamy-Evo was an aggrieved person within the meaning of *Fla. Stat. §* 760.02(10).

64. At all times relevant to this action, Ms. Bellamy-Evo was an individual covered by FCRA pursuant to *Fla. Stat. §* 760.10(1)(a) in that she suffered from a disability or handicap.

65. YMCA, at all times relevant to this action, had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

66. YMCA was, at all times relevant to this action, an employer within the meaning of *Fla. Stat. §* 760.02(7).

67. YMCA subjected Ms. Bellamy-Evo to a hostile work environment because of her

handicap and discriminated against Ms. Bellamy-Evo because of her disability, in violation of *Fla. Stat. §* 760.10(1)(a).

68. The specific acts of discrimination attributable to the YMCA include (i) the failure to provide Ms. Bellamy-Evo with a reasonable accommodation for her disability and (ii) terminating Ms. Bellamy-Evo because of her disability or YMCA's perception that Ms. Bellamy-Evo had a disability.

69. Ms. Bellamy-Evo's disability was a motivating factor in YMCA's decision to terminate (Constructively Discharged) Ms. Bellamy-Evo's employment, in violation of *Fla. Stat. §* 760.10(1)(a).

70. YMCA's treatment of Ms. Bellamy-Evo was sufficiently severe and pervasive that it altered the terms, conditions, and privileges of Ms. Bellamy-Evo's employment with the YMCA.

71. YMCA's violations of *Fla. Stat. §* 760.10(1)(a) were intentional and were done with malice and reckless disregard for Ms. Bellamy-Evo's rights as guaranteed under the laws of the State of Florida by intentionally discriminating against Ms. Bellamy-Evo because of her disability or because it perceived Ms. Bellamy-Evo had a disability. As such, Ms. Bellamy-Evo is entitled to punitive damages against YMCA pursuant to *Fla. Stat §* 760.11(5).

72. Pursuant to *Fla. Stat. §* 760.11(5), Ms. Bellamy-Evo is entitled to recover all attorney's fees from YMCA as the prevailing party in this action.

**WHEREFORE**, Ms. Bellamy-Evo respectfully requests that this Court award her such damages as she has sustained and as shall appear proper within the provisions of the FCRA including, but not limited to, back pay, front pay, loss benefits, economic and non-economic

compensatory damages, punitive damages, attorney's fees, costs, prejudgment interest, a trial by jury on all issues so triable and all other relief that this Court may deem just and proper.

        **/s/ Jesus Irizarry**
        JESUS IRIZARRY, ESQUIRE
        **IRIZARRY MENDEZ PL**
        Florida Bar No.: 103542
        P.O. Box 771713
        Orlando, FL 32877
        Tel. (321) 300-4529
        Fax (888) 901-4529
        E-Mail: jim@IrizarryMendez.com
        Counsel for Ms Bellamy-Evo